NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DERENE DERRICOTTE,<br><br>Plaintiff,<br><br>v.<br><br>PRESSLER & PRESSLER, LLP,<br><br>Defendants. | Civil Action No.: 10-1323<br><br>OPINION |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant Pressler and Pressler, LLP's ("Pressler") motion for summary judgment and award of attorneys' fees ("Defendant's Motion"). On March 12, 2010, Plaintiff Derene Derricotte ("Derricotte") filed a complaint ("Plaintiff's Complaint"). Plaintiff sets forth a cause of action for a violation of the Fair Debt Collection Practices Act (the "FDCPA"). On February 28, 2011, Pressler filed this Motion.

For the reasons set forth below, this Court grants Defendant's Motion with respect to summary judgment; and denies an award for attorneys' fees.

I

Pressler is a New Jersey law firm that represents New Century Financial Services, Inc. ("NCFSI"), a buyer of distressed debt. Derricotte is a student at Rutgers University, and lives in South Orange, New Jersey. On August 7, 2009, NCFSI forwarded a defaulted Sears Premier Card account to Pressler for collection. The account was in the name of Derene

1

Clarke-Derricotte with an outstanding balance of $1,891.64.  On September 18, 2009, Pressler filed a complaint seeking collection in the Superior Court of New Jersey, Essex County, Law Division, Special Civil Part, DC-031554-09 (the "State Court Complaint").  Derricotte filed an answer to the complaint on November 4, 2009 with an attached, in which Derricotte requested "validation" of the debt and requested that Pressler cease and desist all telephone calls to Derricotte regarding the alleged debt (the "Cease and Desist Letter").  In particular, Derricotte stated in the Cease and Desist Letter:

> "I respectfully request for the fourth time, that your offices provide me with competent evidence that I have any legal obligation to pay you. . . . I would also like to request, in writing, that no telephone contact be made by your offices to my home or to my place of employment."

After receiving the Cease and Desist Letter, on November 6, 2009, Pressler telephoned Derricotte, but Pressler hung up before Derricotte answered the telephone.  Derricotte also filed a Notice of Motion to Dismiss the Summons and Complaint for Failure to State a Claim.  The court later dismissed Derricotte's motion and set a trial date of February 25, 2010.  At trial, Pressler's witness failed to appear in court due to a snow storm.  As a result, the Superior Court dismissed the State Court action without prejudice.

In addition to the undisputed facts set forth above, the parties disagree about certain factual details.  Pressler claims that it sent a letter to Derricotte on August 10, 2009 at her home address in South Orange, N.J.  Said letter detailed that a debt of $1,891.64, and that's it, had been purchased by NCFSI and was being collected by Pressler.  In particular, the August 10, 2009 letter stated:

> "This is to notify you that your account with SEARS PREMIER CARD, account # 5049941117744380 has been purchased by NEW CENTURY FINANCIAL SERVICES, INC. and has been placed with the firm of

> Pressler and Pressler, LLP for collection. . . . At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. . . . Unless you notify this office within 30 days after the receipt of this notice that you dispute the validity of the debt, or any portion thereof, this office will assume this debt is valid."

According to Pressler, Derricotte did not respond to the August 10, 2009 letter. Derricotte maintains that she never received this August 10, 2009 letter.

Pressler then proceeded to make a series of phone calls to Derricotte beginning on August 22, 2009 and ending on October 24, 2009. The parties disagree about the extent of these phone calls. Derricotte contends that Pressler telephoned her numerous times, with Pressler telephoning her up to five times per day. To the contrary, Pressler persists that Pressler made only six total phone calls to Derricotte during that time-frame.

Furthermore, Pressler claims that on September 23, 2009, Pressler sent a second letter to Derricotte, in which Pressler offered to settle the underlying debt for 75% of the balance. In particular, Pressler stated in this September 23, 2009 letter:

> "You now owe 1,991.92. If you can make a payment of $1,493.94, 75% of the balance by Sunday, October 11, 2009, it will be accepted as payment in full, a savings to you of $497.98. This will satisfy the debt owed to our client."

Derricotte alleges that she never received this September 23, 2009 letter.

Derricotte additionally alleges that Pressler failed to cooperate in providing details and documentation regarding the underlying debt. According to Derricotte, when Pressler eventually provided details regarding the underlying debt, the account number of the Sears Premier Card did not match the account number listed in the State Court Complaint.

II

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists only if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Such a fact is considered material only if the fact may affect the outcome of the litigation based upon the substantive law. *Ibid.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

After a party files a motion for summary judgment along with supporting papers, the non-moving party "must produce specific facts showing that there is a genuine issue for trial." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109 (3d Cir. 1985) (citation omitted). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (*citing* Fed. R. Civ. P. 56(e)).

III

One of the purposes of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Under the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d.

Derricotte's cause of action for a violation of the FDCPA revolves around four claims. First, Derricotte contends that Pressler violated the FDCPA by consistently "harassing" Derricotte with telephone calls. Second, Derricotte maintains that Pressler violated the FDCPA by filing the State Court Complaint. Third, Derricotte asserts that Pressler violated the FDCPA by failing to provide Derricotte with written notice of the alleged debt. Fourth, Pressler violated the FDCPA by providing inaccurate and/or incomplete responses to Derricotte's discovery requests in the State Court Action. As noted earlier, Pressler seeks Summary Judgment and also attorneys' fees.

For the reasons set forth below, this Court grants Pressler's Motion with respect to summary judgment; and denies an award for attorneys' fees.

Plaintiff's Allegations Regarding Harassing Phone Calls Are Dismissed.

The FDCPA bars debt collectors from placing harassing telephone calls to debtors:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously *with intent to annoy, abuse, or harass any person at the called number*.

15 U.S.C. § 1692d (emphasis added). Generally, courts allow juries to decide whether debt collector conduct is considered annoying, abusive, or harassing. *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1179 (11th Cir. 1985). However, if the conduct "has – or does not have – the

natural consequence of harassing, oppressing or abusing the consumer as a matter of law," summary judgment is appropriate. *Regan v. Law Offices of Edwin A. Abrahamsen & Assoc*s., 2009 WL 4396299, at *6 (E.D. Pa. Dec. 1, 2009). The District of New Jersey has specifically addressed the evidentiary burden that a plaintiff carries in a FDCPA case: "[A] [p]laintiff must provide evidence such that a reasonable juror could conclude that such calls were caused by Defendants with an intent to harass. Absent such evidence, Plaintiff's mere allegations of hang up calls is insufficient to survive summary judgment." *Bey v. Daimler Chrysler Servs. of N. Am., LLC*, 2006 WL 361385, at *10 (D.N.J. Feb. 15, 2006).

Derricotte's cause of action regarding harassing telephone calls can be broken up into two distinct claims: (1) Pressler made numerous telephone calls *prior* to the date on which Derricotte sent Pressler the Cease and Desist Letter; and (2) Pressler continued to make telephone calls *after* having received the Cease and Desist Letter.

**Plaintiff's Claims Regarding Allegedly Harassing Phone Calls Prior to the Cease and Desist Letter Are Dismissed.**

The Parties agree that Pressler telephoned Derricotte on six particular days prior to the cease and desist letter: August 22, August 28, September 4, September 21, October 13, and October 24, 2009. After each call, Pressler left an automated message on Derricotte's answering machine. In addition to the above, Derricotte contends that she received five phone calls *per day* from Pressler. Pressler posits that Derricotte cannot produce any evidence as to these daily phone calls.

This Court has combed through the records provided. Derricotte attached documents to both her Complaint and Opposition brief; but, there is no *evidence* in these records of such phone calls. Derricotte stated in her affidavit: "There were days where I received up to five (5)

6

telephone calls from Defendant." This Court is not persuaded by this statement though because, when pressed at her deposition, Derricotte failed to substantiate this allegation. Derricotte Dep. 208:1-23. Rather than providing substantive documentation of these phone calls, Derricotte merely repeated that she received these frequent phone calls from Pressler.

Such conclusory allegations are insufficient to survive summary judgment. *See Fashakin v. Nextel Commc'ns*, 2009 WL 790350, at *1 (E.D.N.Y. Mar. 25, 2009). In *Fashakin*, the debtor accused the debt collector of multiple FDCPA violations, including calling the debtor repeatedly and at odd hours regarding an alleged debt. *Fashakin*, 2009 WL 790350 at *4. In particular, the debtor insisted that the debt collector made phone calls to her "morning and night." *Ibid*. Despite this assertion, the debtor could not produce any evidence, other than her affidavit, to support such a claim. *Id*. The *Fashakin* court granted summary judgment in favor of the debt collector. *Id*. The court emphasized that because the affidavit "[did] not set forth facts that are either specific or supported," the evidence was not sufficient to defeat a motion for summary judgment. *Id*.

The *Fashakin* decision is on-point to the facts at hand. Here, Derricotte has failed to set forth facts that are either specific or supported. Again, Derricotte relies upon nothing more than an affidavit statement and deposition testimony. This Court agrees with the *Fashakin* court that such minimal evidence is "insufficient to defeat [a] motion for summary judgment." *Fashakin*, 2009 WL 790350 at *4.

In sum, no genuine issue of material fact exists as to whether Pressler placed more than six telephone calls to Derricotte prior to the issuance of the Cease and Desist letter. As such, this

Court is convinced that Pressler placed only six telephone calls to Derricotte over a ten week time frame. Moreover, these calls were about a week apart.[1]

The nature of these telephone calls does not strike this Court as excessive or harassing. In fact, courts have ruled for debt collectors in cases with behavior that is significantly more excessive or harassing than that at issue here. For example, in *Tucker v. CBE Group Inc.*, defendant debt collector made over 50 calls to a plaintiff debtor. The court held, however, that even though the amount of calls was high, the defendant "left only six messages, made no more than seven calls in a single day, and did not call back in the same day after leaving a message," and therefore did not intend to harass the plaintiff. *Tucker v. CBE Group Inc.*, 710 F.Supp.2d 1301, 1305 (M.D. Fla. 2010).

Moreover, in *Udell v. Kan. Counselors, Inc.*, where defendant debt collector placed four telephone calls to plaintiff over seven days without leaving a message, the court found that "there [was] nothing harassing, oppressive, or abusive about this conduct." *Udell v. Kan. Counselors, Inc.*, 313 F.Supp.2d 1135, 1144 (D. Kan. 2004).

Here, there is evidence of only six total calls made by Pressler to Derricotte before she filed the Cease and Desist Letter with the court. There is no evidence that the six phone calls were made with an intent to harass, oppress or abuse. Therefore, Pressler's motion should be granted due to a lack of evidence proffered by Derricotte.

**Plaintiff's Claims Regarding Allegedly Harassing Phone Calls After the Cease and Desist Letter Are Dismissed.**

On November 4, 2009, Derricotte filed the Cease and Desist Letter with the Court, which stated "would [] like to request, in writing, that no telephone contact be made by [Pressler] to my

---

1. The Derricotte Noteset clearly shows the exact date and time that each phone call was made.

home or to my place of employment." Derricotte claims that, even after she sent a cease and desist letter to Pressler, Pressler continued to make calls regarding the alleged debt. This Court is not convinced that a genuine issue of material fact exists with respect to this claim.

  The FDCPA states in pertinent part that debt collectors may not contact debtors:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
>   (1) to advise the consumer that the debt collector's further efforts are being terminated;
>   (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>   (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c. "Communication" is defined as the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a.

  In this case, Derricotte's Cease and Desist Letter was filed with the court in order to have Pressler make "no telephone contact" with Derricotte. Both parties agree that on November 6, 2009, Pressler did call Derricotte and hung up "after a couple of rings." Pressler asserts that since Pressler never spoke with Derricotte, there was no communication between the Parties; and thus, Pressler never communicated with Derricotte after the filing of the Cease and Desist Letter. Derricotte contends the hang-up call violated Section 1692c(c) of the FCDPA.

  There was no intent to harass, oppress or annoy Derricotte. Courts have dismissed section 1692d claims as a matter of law if the facts as alleged do not have a natural consequence of harassing or abusing a person in connection with the collection of a debt. *Id*. at 330 (*citing Kerr v. Dubowsky*, 71 F. Appx 656, 657 (9th Cir. 2003) (holding that the district court had properly

9

dismissed a section 1692d claim because, while the complaint alleged that the debt collector's phone call was unwanted, the plaintiff "failed to allege facts that it was intended to 'harass, oppress, or abuse'")

As in *Kerr*, this case does not involve any form of intended harassment, oppression, or abuse.  Here, Pressler's staff immediately removed Derricotte from the call list upon recognizing that she was on the "no call" list.  Additionally, Pressler asserts - under penalty of perjury - that "a paralegal employed by Pressler accidentally dialed the Plaintiff's phone number and after several rings hung up the phone after realizing Plaintiff advised she wanted no further phone contact."  Derricotte also fails to offer any evidence of any intent of harassment, oppression or abuse.

The State Court Collection Action

Under the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  However, "[a] debt may be properly pursued in court, even if the debt collector does not possess proof of its claim."  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006). *See*, *Christion v. Pressler & Pressler LLP*, 2010 WL 988547, at *3 (D.N.J. Mar. 12, 2010); *Mello v. Great Seneca Fin. Corp.*, 526 F. Supp. 2d 1024, 1030 (C.D. Cal. 2007).

Here, Derricotte alleges that Pressler violated the FDCPA by filing the State Court Action even though Pressler knew that it lacked the evidence to prove Derricotte owned the debt; and intended to harass and mislead Derricotte into paying the alleged debt.  Derricotte points to the fact that the account number set forth by Pressler in its State Court complaint does not match the account number Pressler produced during the State Court Action.  Specifically, the Sears Premier Card owned by Derricotte is registered to account number 64 81000 08645 0, while the

10

account number submitted by Pressler is registered as 504994117744380. Derricotte also emphasizes the fact that Pressler only became aware of the difference in account numbers three months after the State Court Action began.

It has been held that "the filing of a debt - collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor." *Harvey*, 453 F.3d 324 at 330.

In fact, Pressler appears to have acted upon the information provided by its client, NCFSI. As noted in the Affidavit of Jeffrey Esposito, the 5049911774380 account number is attached to the bottom of the statement submitted by Pressler and was used by Citibank to identify the account at the time of sale. Based on the information provided in these statements, which included the account number, address and phone number of Derricotte, Pressler proceeded to collect the alleged debt. Derricotte provides no proof to rebut these facts. As such, this Court holds that Pressler did not knowingly or intentionally make a misrepresentation in order to harass Derricotte.

<u>Written Notice of the Debt</u>

Derricotte contends that she never received proper written notification from Pressler of her right to dispute the debt. The FDCPA provides the proper means by which a creditor must notify a debtor of a debt:

(a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice. . . .

15 U.S.C. § 1692g. Here, Pressler has sworn – under penalty of perjury – that the letter was sent and not returned as undeliverable. Moreover, Pressler attached a copy of the letter, which contained Derricotte's correct mailing address and is dated August 10, 2009. Additionally, the Derricotte Noteset, which Derricotte relies on as evidence of the phone calls that Pressler made to her appears to indicate that a letter was sent to Derricotte's address. Derricotte proffers no evidence in dispute of these facts.

Rather, Derricotte mistakenly emphasizes that even if the letter was, in fact, sent, she never received it. According to Derricotte, this signifies that Pressler failed to fully comply with their obligations under the FDCPA. This Court is not persuaded by this argument. In fact, the case law is quite clear that such a notice must only *be sent* to a debtor:

> The plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice *need only be sent to a debtor*.

*Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197, 1201 (9th Cir. Cal. 1999) (emphasis added); *see Johnson v. Midland Credit Mgmt. Inc.*, WL 2473004, at *1, 11, (N.D. Ohio Aug. 24, 2006); *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1097 (D. Or., 2000). As long as the notice was sent to the address where the consumer lives and was not returned as undeliverable, the debt collector will have satisfied the requirements under the FDCPA. *Johnson*, 2006 WL 2473004 at *12.

Because Pressler has offered evidence that it created the notice, sent it to an address where Derricotte lives, and that the notice was not returned as undeliverable, this court finds that the debt collection notice was sent by Pressler in compliance with the FDCPA.

<u>Inaccurate and/or Incomplete Responses to Plaintiff's Request for Information About the Underlying Debt.</u>

Derricotte generally alleges that Pressler failed to comply with its discovery obligations. In particular, Derricotte states that Pressler provided incomplete and/or inaccurate information regarding the underlying loan at issue in the State Court Collection Action. Pressler has responded to this argument, however, by asserting that such a claim is barred by claim preclusion.[2] As such, according to Pressler, Summary Judgment must be granted on such claims.

Derricotte failed to address this argument in her opposition papers. When a non-moving party fails to respond to a moving party's argument, that argument shall be deemed unopposed. *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 627 (D.N.J. 1996); *see also Nichols v. Verizon Commc'ns, Inc.*, 2002 WL 31477114, at *13 (D.N.J. 2002). Here, after reviewing Derricotte's opposition brief, Derricotte failed to respond to Pressler's argument on this issue. As such, this Court deems waived Derricotte's claims revolving around incomplete and/or inaccurate discovery responses.

## IV

Pressler also claims that it is entitled to attorney's fees because Derricotte's complaint was based on a lack of evidence and knowledge of the law and was therefore filed for the purpose of harassment. The relevant section of the FDCPA states in pertinent part:

> On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court

---

[2] Derricotte filed a Notice of Motion to Dismiss for Failure to State a Claim or, alternatively, a Motion to Compel. Both were denied by the Superior Court of New Jersey, Essex County, Law Division, Special Civil Part.

> may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1692k(a)(3). This court cannot find any evidence of bad faith or harassment. In order for Pressler to succeed on a claim for attorney's fees, "there must be evidence that [Derricotte] knew that his claim was meritless and that [Derricotte] pursued his claims with the purpose of harassing the defendant." *Gorman v. Wolpoff & Abramson*, *LLP*, 435 F. Supp. 2d 1004, 1013 (N.D.Cal. 2006). Here, Pressler has been unable to provide any evidence of Derricotte's intent to harass or evidence that her claim was meritless. Instead, Pressler makes unsupported allegations that Derricotte did not properly investigate the facts or understand the law. Derricotte, however, did provide evidence of six phone calls made by Pressler prior to the Cease and Desist Letter as well as evidence of another phone call made following the filing of the Cease and Desist Letter. This court therefore denies Pressler's application for attorney's fees.

V

For the reasons set forth above, this Court grants Pressler's motion for summary judgment, but denies Pressler's award for attorneys' fees.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

July 19, 2011